UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| ANTHONY LEE GRINDSTAFF, # 394465, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:13-CV-304-TWP |
| | ) | |
| CHRIS MATHES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

This pro se prisoner's civil rights action for injunctive relief and damages under 42 U.S.C. § 1983 was brought by Anthony Lee Grindstaff ("Plaintiff"), who is now confined in the Hardeman County Correctional Facility in Whiteville, Tennessee. Defendants are Chris Mathes, former Sheriff of Carter County, Tennessee; Tom Smith, Captain and former Carter County Jail Administrator; Gene Moreland, a timekeeper; Dwight Lacey, a timekeeper; and Michael Cox, a former correctional officer. Plaintiff alleges that Defendants failed to protect him from an assault by another inmate, which occurred on August 3, 2013, while Plaintiff was housed in protective custody at the Carter County Detention Center ("CCDC") in Elizabethton, Tennessee.

Two motions are currently pending. Plaintiff has moved for summary judgment, and Defendants Tom Smith, Dwight Lacey, and Gene Moreland ("Defendants")[1] have responded in opposition [Docs. 36, 44]. Likewise, Defendants have filed a motion for summary judgment, which is supported by a memorandum brief and declarations submitted by each of these three Defendants [Docs. 42, 42-1, 42-2, 42-3, and 43]. Plaintiff opposes the motion [Doc. 45].

---

[1] The designation, "Defendants," as used in this Opinion, refers only to these three Defendants.

For the reasons which follow, the Court finds that Plaintiff's summary judgment motion should be **DENIED** and that Defendants' motion should be **GRANTED**.

I.      FACTUAL BACKGROUND

These are the facts as Plaintiff portrays them in his verified complaint [Doc. 1].

Plaintiff was placed in protective custody in the CCDC, due to his status as an informant for the drug task force. On August 3, 2013, he was beaten by Houston Hartley ("Hartley"), an inmate in disciplinary segregation, after Defendant Correctional Officer Michael Cox opened Plaintiff's cell door and allowed the assailant to enter Plaintiff's cell. As a result, Plaintiff sustained personal injuries which still affect him. Plaintiff has been beaten several times in the past in the CCDC and has had to be transferred from the CCDC to other facilities for safety reasons. Defendants Gene Moreland and Dwight Lacey are CCDC Time Keepers, who control unit to unit transfers at the facility, as well as transfers from the CCDC to other facilities. Defendants Moreland and Lacey denied Plaintiff's requests to be moved to another unit or to be transferred to another facility, though he advised them that he was in danger in the protective custody unit and also in the jail. Defendant Tom Smith denied Plaintiff's grievances about being unsafe in the jail and his requests to be transferred to another unit or facility.

Defendant Chris Mathes has had Plaintiff transferred to other facilities in the past but has ignored Plaintiff's requests and grievances concerning Plaintiff's safety concerns. Defendant Mathes also allowed Defendant Cox to work on the unit wherein Plaintiff is housed in the months following Plaintiff's assault, even though Defendant Cox was written up for allowing Plaintiff to be assaulted. Plaintiff has been assaulted twice after making all those requests for a transfer to another unit or facility. The Court views these facts in favor of Plaintiff.

2

Defendants' declarations contain facts which fill in the gaps in Plaintiff's factual scenario [Doc. 42-1, Declaration of Thomas Smith; Doc. 42-2, Declaration of Gene Moreland; Doc. 42-3, Declaration of Dwight Lacey]. On August 3, 2013, Plaintiff requested shampoo from Hartley, who was housed in a nearby cell. Based on Plaintiff's request, Defendant Cox opened Hartley's cell door and obtained the shampoo from Hartley. Defendant Cox closed Hartley's cell door, but did not make sure that the cell door was secured. Defendant Cox then opened Plaintiff's cell door to provide him with the shampoo. At that point, Hartley pushed out of his cell, burst into Plaintiff's cell, and attacked Plaintiff. Defendant Cox pulled Harley off Grindstaff, placed Hartley in handcuffs, and removed Harley from Plaintiff's cell. Defendant Cox made arrangements for Plaintiff to be provided medical care.

Defendants did not authorize the actions of Defendant Cox in transferring the shampoo from Hartley to Plaintiff and were unaware of Defendant Cox's actions until after he took those actions. Defendant Cox's conduct violated a CCDC policy which prohibits the transfer of such items between inmates. The event was investigated, and Hartley was disciplined as a result of his attack on Plaintiff. Defendant Cox was also disciplined through written letters of counseling for his violation of CCDC procedural mandates. Plaintiff was advised, in response to a grievance he filed complaining about the attack, of the disciplinary actions taken against Hartley and Defendant Cox and further advised that no such incident should recur.

Plaintiff was released on bond on September 4, 2013, but was rearrested on additional charges and incarcerated in the CCDC on September 16, 2013. On September 19, 2013, Plaintiff filed a grievance, complaining that he was not safe in the CCDC, and requesting a transfer to another facility. Plaintiff's request was denied; he was notified that he would be placed in

3

protective custody; and he was subjected to no further attacks by other inmates. Plaintiff filed numerous grievances during his second incarceration in the CCDC.

During the time at issue in this suit, Defendant Tom Smith was the CCDC Jail Administrator and he, in consultation with other CCDC officials, including Defendant Mathis, would have made the decision as to whether to transfer Plaintiff. Based on his assessment of the safety issues surrounding Plaintiff's incarceration in the CCDC, he did not believe a transfer to be necessary and believed that Plaintiff could be protected adequately through the use of protective custody.

Defendants Gene Moreland and Dwight Lacey were CCDC time keepers and neither was a decision maker as to whether to transfer Plaintiff.

## II.     SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted to the movant, as long as what is before the Court by way of cited materials in the record, including documents, affidavits or declarations, admissions, interrogatory answers or other materials, demonstrate that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp,* 477 U.S. at 323. The moving party does not have to

4

offer evidence disproving the nonmoving party's claim but may carry its burden by showing an absence of evidence to support the nonmoving party's case. *Id.* at 325.

To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id*. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd*., 244 F.3d 797, 800 (6th Cir. 2000). A plaintiff facing the prospect of summary adjudication cannot "sit back and simply poke holes in the moving party's summary judgment motion," *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990); cannot rest on his pleadings or allegations; but instead, must present material evidence in support of those allegations. *Celotex Corp.*, 477 U.S. at 324. Bare contentions will not suffice. *Mitchell v. Toledo Hosp*., 964 F.2d 577, 581-82 (6th Cir. 1992).

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. To put it differently, if a court concludes that a fair-minded jury could not return a verdict in favor of a plaintiff based on the evidence presented, summary judgment should enter. *Liberty Lobby*, 477 U.S. at 251-52.

The Court turns first to Plaintiff's summary judgment motion.

### III.   PLAINTIFF'S MOTION

Plaintiff's summary judgment motion asserts that when he was booked into the jail on September 16, 2013, he was advised that an inmate, Shane Vernon Whitehead, was in the jail [Doc. 36]. Plaintiff maintains that it was well known in the jail that Plaintiff had "worn[] a wire" several times and had busted Whitehead and that Whitehead "quickly placed a bounty on" Plaintiff [*Id*. p.1]. Plaintiff further maintains Defendants refused his requests to be transferred to another jail

5

and allowed him to be assaulted by Hartley. Plaintiff charges that Defendant Officer Michael Cox opened Plaintiff's cell door "for the inmate to come in and assault him [and] that [Plaintiff] later learn[ed] that Cox was paid by Shane White's family to have [him] assaulted in the jail" [Doc. 36 at 2]. Plaintiff argues that these asserted claims entitle him to judgment.

Defendants oppose the motion for several reasons, the first of which is that the motion does not meet the summary judgment standard. That much is true. Rule 56(c) states that a party asserting that a fact cannot be disputed must support that assertion by citing to particular parts of materials in the record or showing that the materials cited do not establish the absence or presence of a genuine dispute. Plaintiff's motion sets forth allegations, only some of which were contained in his complaint, and insists that those claims entitle him to judgment. Yet, he offers no developed argument to demonstrate that he is entitled to prevail on those claims as a matter of law.

Defendants also correctly point out that Plaintiff's motion is unsworn and suggest that the Court may not consider unsworn statements when ruling on a motion for summary judgment. Both of Defendants' arguments are sound. Plaintiff's motion is not sworn and is not signed under penalty of perjury. Furthermore, in *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235 (6th Cir. 2010), a case to which Defendants cite, the Sixth Circuit determined a court "may not consider unsworn statements when ruling on a motion for summary judgment." *Id*. at 239 n.1 (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991)). Accordingly, Plaintiff's unsworn statements may not be considered on summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17, (1970) ("This statement being unsworn, does not meet the requirements of Fed.Rule Civ.Proc. 56(e)."); *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006) (observing that "prisoners' unsworn statements do not satisfy the requirements of Fed. R. Civ. P. 56(e) that

6

summary judgment materials be made upon personal knowledge, [and] shall set forth such facts as would be admissible in evidence") (citations omitted) (internal quotation marks omitted).

Third, the Court notes that Plaintiff has interjected new claims into his summary judgment motion. Plaintiff did not allege in his complaint that he was advised on September 16, 2013, that Whitehead had placed a "bounty" on him or that the Whitehead family paid Defendant Michael Cox to open Plaintiff's cell door on August 3, 2013, so that Hartley could assault Plaintiff. Plaintiff did not contend in his complaint that any event happened on September 16, 2013. Because these claims are newly raised in Plaintiff's summary judgment motion, the Court will not consider them. *See Crest A Apartments Ltd. II v. United States*, 52 Fed. Cl. 607, 613 (2002) (declining to consider claims asserted in a motion for summary judgment but not pleaded in the complaint) (compiling cases).

For the foregoing reasons, the Court concludes that Plaintiff has not carried his burden of showing the existence of a genuine dispute as to any material fact, and the Court will **DENY** Plaintiff's motion for summary judgment [Doc. 36].

## III. DEFENDANTS' MOTION

Defendants argue, in their motion for summary judgment, that they are entitled to qualified immunity because Plaintiff cannot show the violation of a constitutional right [*Id*.]. This is so, they suggest, since there is no evidence that Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff, due to his history of acting as an informant. Because Defendants have asserted a qualified immunity defense, Plaintiff has the burden of establishing that qualified immunity is not justified with respect to Defendants. *Gavitt v. Born*, No. 15-2136, 2016 WL 4547258, at *11 (6th Cir. Sept. 1, 2016) (citing *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

7

Plaintiff objects to the summary judgment motion [Doc. 45 p.2, "Note: I object to their Motion to Dismiss . . ."], maintaining, as the Court understands his response, that he is unable to contest Defendants' motion because Defendants have not furnished him with his "Booking Report" for the years of 1998 to 2003 or with the video footage depicting the day of the assault [Doc. 45 at 1]. The Court assumes that Plaintiff is invoking Rule 56(d), of the Federal Rules of Civil Procedure, but that rule requires a nonmovant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(c). Plaintiff has not met the rule's requirements because he had not filed an affidavit or declaration to support that such facts are unavailable to him at this time. Fed. R. Civ. P. 56(d).

However, even without an affidavit or declaration, Plaintiff has attached to his response a letter addressed to him from Defendants' counsel which shows that the booking reports are not available to him at this time, or possibly at any future time since the letter infers that the booking reports may not exists [Doc. 45-1]. In the letter, counsel replies to Plaintiff's request for a booking report for the years 1998-2003, by stating that "Rule 34 of the [Federal] Rules of Civil Procedure requires parties to produce documents but does not require parties to create documents that do not exist" [*Id.*]. The letter goes on to advise Plaintiff to identify the specific documents he is seeking, if he is looking for actual documents relating to his bookings prior to 2004, and to signal to him that Defendants likely would object to producing documents from 1998 to 2003 on relevancy grounds, given the age of any such a document.

Thus, even if Plaintiff's response been accompanied by his affidavit or declaration, it is doubtful that the Court would delay ruling on Defendants' motion. First, the Court would be inclined to question the relevancy of the CCDC 1998-2003 booking reports, if they exist, to show that it was unsafe to house Plaintiff in the CCDC ten years later, i.e., on August 3, 2013. Secondly,

8

the Supreme Court has held that, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants are claiming entitlement to qualified immunity, and if they are so entitled, then this case should be dismissed before discovery proceeds. The Court sees no reason to delay ruling on Defendants' motion.

### A. Law

#### 1. Qualified Immunity

Qualified immunity protects governmental officials from suit in their individual capacities where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818; *see Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law"). When a defendant asserts qualified immunity, a court must determine: "(1) whether the facts alleged by the plaintiff make out the violation of a constitutional right and (2) whether the right at issue was 'clearly established' at the time of the alleged violation." *Gavitt v. Born*, No. 15-2136, 2016 WL 4547258, at *11 (6th Cir. Sept. 1, 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Either step may be considered first. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). A "clearly-established" right is one which has been decided by the Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged violation occurred. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

Once a qualified immunity defense has been advanced, it is the plaintiff's burden to show that a defendant is not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311

9

(6th Cir. 2000). And, importantly, qualified immunity means "*immunity from suit* rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526 (italics in original). "[I]f the plaintiff cannot make both showings, the officer is entitled to qualified immunity." *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015) (citing *Pearson*, 555 U.S. at 236, 129 S.Ct. 808).

### 2. Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect prisoners who are committed to their care from the violent acts of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Though prison officials must make sure that inmates enjoy reasonable safety, *see id*. at 844-45, the Constitution does not expect them to stop all inmate-on-inmate violence simply because of their obligation to ensure reasonably safe confinement conditions. *Id*. (noting that not every injury an inmate sustains from an assault by another inmate "translates into constitutional liability for prison officials responsible for the victim's safety"). Instead, to establish such liability, a prisoner claiming that prison authorities have failed to protect him from harm suffered at the hands of another prisoner must show "(1) that he is incarcerated under conditions posing a substantial risk of serious harm, and (2) that the prison official had the state of mind . . . of deliberate indifference to inmate health or safety." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (internal quotation marks omitted) (citing *Farmer*, 511 U.S. at 834).

A prison official cannot be found deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety," which, requires: (1) that he be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) that he "also draw the inference." *Farmer*, 511 U.S. at 837. Also, where prison officials who actually know of a significant risk to a prisoner respond reasonably to the risk, they are not liable, "even if the harm ultimately was not averted." *Id.* at 844. The burden of showing an Eighth

10

Amendment violation falls on Plaintiff and that burden is a heavy one. *Pyles v. Fahim*, 771 F.3d 403, 408-09 (7th Cir. 2014) (citing *Whitley v. Albers*, 475 U.S. 312, 325 (1986)).

   **B. Analysis**

Defendants concede, for purposes of summary judgment, that there was a substantial risk of serious harm to Plaintiff as a result of his informer status [Doc. 43 p.7]. Defendants argue, however, that Plaintiff has failed to show that they were deliberately indifferent to that risk. Defendants maintain that Plaintiff was placed in protective custody to safeguard him from inmates who might wish to harm him and that he was in protective custody when he was assaulted. Defendants also maintain that the contact between Plaintiff and Hartley was unauthorized and that it occurred only because Defendant Cox inadvertently failed to ensure that Hartley's cell door was secured prior to opening Plaintiff's cell door.

Inadvertence, Defendants argue, is not a basis for finding deliberate indifference on the part of Defendant Cox, much less a basis for finding deliberate indifference on the part of Defendants who were unaware of the encounter between Plaintiff and Hartley until after it occurred. Thus, Defendants conclude, the fact that Defendant Cox was not "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed, along with the fact that he did not draw the inference negates the element of deliberate indifference.

Defendants also argue that reasonable officers in Defendants' positions would have believed that placing Plaintiff in protective custody would be sufficient to protect him from the risk of harm from other inmates and that this likewise shows their entitlement to qualified immunity.

   **C. Analysis**
      1. **Constitutional Violation**

As noted, the first prong of the qualified immunity test asks: "Do the facts, viewed in Plaintiff's favor, and the evidence produced show a constitutional violation?" The Court finds that the facts do not meet this test.

Recall that the issue as to whether Plaintiff has stated a violation of his right to be protected from violence at the hands of another inmate is not whether he faced a substantial risk of serious harm, since that element has been conceded by Defendants, but only whether Defendants were deliberately indifferent to that risk.

There are no facts properly before the Court to show that Defendant Cox's failure to ensure that Hartley's cell door was securely locked after he acquired the shampoo from Hartley to give to Plaintiff was anything other than an inadvertent or an unintentional act. Defendant Cox's omission was not a chosen, deliberate course of action. *Farmer*, 511 U.S. at 840 ("Use of 'deliberate,' for example, arguably requires nothing more than an act (or omission) of indifference to a serious risk that is voluntary, *not accidental*.") (emphasis added).

Instead, the failure to secure Hartley's cell door was a negligent act, and it is well established "that deliberate indifference entails something more than mere negligence." *Farmer*, 511 U.S. at 535. And, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319. Moreover, because Plaintiff has not shown that Defendant Cox knew that Hartley's cell door was not truly locked, the Court cannot conclude that Defendant Cox was aware that Plaintiff faced a substantial risk of serious harm of an attack due to the lock not being securely fastened. *Farmer,* 511 U.S. at 840 (noting that liability for an Eighth Amendment violation "requires consciousness of a risk").

Recall also that a defendant who is aware of a risk, but who takes reasonable steps to address the risk is free from liability. *Id*. at 844 (noting that "prison officials who act reasonably

12

cannot be found liable" for an Eighth Amendment violation). After the assault, Defendant Cox pulled Hartley off Plaintiff, secured Hartley in handcuffs, had Hartley removed from Plaintiff's cell, and arranged for Plaintiff to be rendered medical care. Also disciplinary measures were taken against both Hartley and Defendant Cox. These were reasonable actions employed in response to the assault and in an effort to avert any further risk of harm to Plaintiff.

As to Plaintiff's claims that he was not transferred to another facility, he has not presented any facts to show that he was not placed in protective custody at the CCDC to prevent his exposure to inmates who might have harmed him. And given the existence of the uncontradicted evidence that any transfer decision would not have been made by Defendants Moreland and Lacey in their position as time keepers and that they in fact did not make any such a decision, these two Defendants cannot be liable for failing to transfer Plaintiff to another facility.

Furthermore, Defendant Smith acted reasonably in assessing Plaintiff's situation and in deducing that Plaintiff could be protected adequately through use of protective custody.

The Court therefore finds that Plaintiff has failed to establish a constitutional violation with regard to Hartley's violent actions against him or to Defendants' failure to transfer him from protective custody to another unit at the CCDC or to different correctional institution.

### 2. Well-Established Right

Defendants ask the Court to find that a reasonable officer would have believed that choosing to place Plaintiff in protective custody due to the particular risk he personally faced as an informant, rather than to transfer him to another facility was lawful, in light of the clearly established law governing failure to protect claims.

13

The Court declines to address the second component of the qualified immunity test since Plaintiff has failed to show that a constitutional violation occurred. *Brown*, 779 F.3d at 412 (observing that a defendant is shielded by qualified immunity unless a plaintiff makes both showings).

**IV.  CONCLUSION**

The Court has viewed the evidence in the light most favorable to Defendants and now finds that there is no genuine dispute as to any material fact as to whether Plaintiff is entitled to summary judgment and that he clearly is not so entitled.  Accordingly, Plaintiff's motion for summary judgment will be **DENIED** [Doc. 36].

The Court has likewise viewed the evidence in the light most favorable to Plaintiff and now finds there is no genuine dispute as to any material fact as to whether Defendants are shielded by qualified immunity from damages and finds that they are so shielded.

Therefore, Defendants are entitled to summary judgment as a matter of law and their summary judgment motion will be **GRANTED** [Doc. 42].

**AN APPROPRIATE ORDER WILL ENTER**.

    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE